UNITED STATES v. KENNARD et al.

(Circuit Court of Appeals, Second Circuit. April 3, 1900.)

No. 122.

POSTMASTER—ACTION ON BOND—PLEADING.

> The United States cannot recover, in an action on the bond of a postmaster, for losses suffered by the post-office department by reason of the payment of fraudulent money orders by other offices, which fraud was made possible by the defendant's disregard of a regulation of the department requiring him to safely keep his book of money-order forms, where the cause of action stated in the complaint is for the recovery of moneys received and collected by the defendant, as postmaster, from postage, the sale of stamps, envelopes, money orders, and cards, and not turned over.

In Error to the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon a writ of error by the United States, who were plaintiffs below, to review a judgment of the circuit court, Southern district of New York, in their favor, for $12, with interest and costs. The judgment was entered upon the verdict of a jury, which was instructed by the court to render a verdict in favor of plaintiffs for $12, and which, as to the residue of the claim, brought

in a verdict for defendants. The plaintiffs claimed to be entitled to a recovery in the amount of some $2,320.

Arthur M. King, for the United States.

W. J. Townsend, for defendants in error.

Before LACOMBE and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The action was brought upon a postmaster's bond, in the sum of $3,000, executed October 13, 1892, by defendant Coleridge Kennard, the postmaster at Chauncy, N. Y., as principal, and by the two other defendants as sureties. The bond is conditioned that said postmaster, Kennard—

"Shall faithfully discharge all the duties and trusts imposed on him; either by law, or the rules and regulations of the post-office department of the United States, and shall also perform all of the duties and obligations imposed upon or required of him by law, or the rules and regulations of the said department, in connection with the money-order business."

A regulation of the department, with which the defendant postmaster was familiar, provides as follows:

"Postmasters Responsible for Loss of Money-Order Forms. Postmasters must keep their stock of blank money-order and advice forms in their own custody, under lock and key, in some place of security, to which unauthorized persons cannot have access; and they will be held responsible for any loss which the department may suffer, arising from fraud made possible through a disregard of this regulation."

In the latter part of June, 1893, a person presented himself to the defendant postmaster, at his office, in Chauncy, and stated that he was a post-office inspector; at the same time exhibiting a card to that effect, countersigned by the postmaster general. The fair inference from the testimony seems to be that he was a man who had once been inspector, and who, upon leaving the government service, had retained his credentials. He told a plausible story about there being some change in the form of money orders prescribed by the department, stating that he had been sent to take up the old book of forms. Believing his visitor to be his superior officer, the postmaster delivered to him the book of money-order forms. Subsequently many of the forms thus fraudulently obtained were filled up, all in the same name, were stamped with a bogus stamp purporting to be the stamp of the Chauncy post office, and were cashed at other offices; causing a loss to the government of the amount of such bogus orders. Such loss undoubtedly was caused by a fraud which was made possible through the delivery of the book of forms to the wrongdoer. There seems to have been much discussion below as to the powers of a post-office inspector, and as to the degree of care exercised by the defendant postmaster. The latter question is the one which was sent to the jury, and exceptions were taken to the charge of the court in that particular. It seems to us unnecessary to review any of these exceptions, for the reason that, in our opinion, the court should have directed a verdict for precisely the same amount that the jury found. Upon the proof as it stood at the close of the case, plaintiffs were entitled to recover $12, with interest and costs, and no more. The cause of action set forth in the complaint is for moneys received and

not turned over. After reciting the bond, the complaint avers that the defendant Coleridge Kennard, being in fact such postmaster, did not faithfully comply with or perform the duties thereunder, but neglected and refused to discharge the duties and trusts imposed upon him, and neglected and refused to "turn over or pay to the plaintiffs the moneys collected by said Kennard, as postmaster, due the plaintiffs, from postage, and from the sale of postage stamps and stamped envelopes, and for money orders and postal cards, and from other sources connected with the postal service of the said United States, while he was such postmaster." It further avers that on or about June 20, 1894, there was a balance in the hands of said defendant, due to the plaintiffs from said defendant, for money collected as aforesaid by said defendant as postmaster, amounting to $2,320, which, although demanded, he had neglected and refused to pay over. Manifestly, the breach of the bond here counted on is not a failure to conform to the regulation touching the safe custody of the book of forms, whereby the post-office department suffered loss, arising from a fraud made possible through the defendant's disregard of such regulation. The defendants are called upon by the complaint to answer no such claim. The issues arising upon the denial of the averments of the complaint are merely whether the postmaster collected moneys due to the United States, which he has neglected and refused to turn over. If he did, all three defendants are liable, for such conduct would constitute a breach of the condition of the bond. The evidence showed that for a certain money order, described as No. 26, he received $12, which he had never turned over; but the record presented to this court wholly fails to show the collection by him of any other moneys due the United States from postage, postage stamps, stamped envelopes, money orders, postal cards, or other sources, which he had not turned over. The testimony shows affirmatively, and without contradiction, that he never collected a penny for the money orders which he delivered to the fraudulent inspector. Upon this state of the pleadings and the proof, plaintiffs were entitled to judgment for no larger amount than that included in the judgment now under review. The judgment of the circuit court is affirmed.